## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTERRA MF, LLC; ARMANDO CODINA, an individual; JAMES CARR, an individual; NORMAN BRAMAN, an individual; 2020 BISCAYNE BOULEVARD, LLC; 2060 BISCAYNE BOULEVARD, LLC; 2060 NE 2ND AVE., LLC; 246 NE 20TH TERRACE, LLC; and NO CASINOS, a Florida 501(c)(4) organization,<br><br>Plaintiffs,<br><br>v.<br><br>DEB HAALAND, in her official capacity as Secretary of the United States Department of the Interior, and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants. | Case No. 21-cv-2513 |

## REPLY IN SUPPORT OF PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

Glenn Burhans, Jr.
Robert J. Walters
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON PA
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, Florida 32301

Eli J. Kay-Oliphant, D.C. Bar No. 503235
eli.kay-oliphant@sparacinopllc.com
Ryan R. Sparacino, D.C. Bar No. 493700
ryan.sparacino@sparacinopllc.com
SPARACINO PLLC
1920 L Street, NW, Suite 535
Washington, D.C.  20036
(202) 629-3530

*Counsel for Plaintiffs*

Eugene E. Stearns
Grace L. Mead
Jenea M. Reed
Coral Del Mar Lopez
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON PA
150 West Flagler Street, Suite 2200
Miami, Florida  33130

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ................................................................................................... 1

THE ADMINISTRATIVE RECORD ........................................................................ 4

PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT .................................. 7

      I.      Plaintiffs Have Standing to Challenge Defendants' Approval of the 2021
            Compact ................................................................................................. 7

      II.     The Compact Approval Must Be Set Aside.......................................... 10

            A.     Defendants Ignore IGRA's Express Terms ............................. 10

            B.     The Compact Approval Unlawfully Circumvents State Gaming
                 Law ........................................................................................ 12

            C.     The Compact Approval Allows Sports Betting that Violates
                 Federal Law .......................................................................... 14

      III.    Declaratory Relief Is Necessary and Appropriate ................................. 15

CONCLUSION..................................................................................................... 16

CERTIFICATE OF SERVICE ............................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  271 F.3d 262 (D.C. Cir. 2001) ...................................................................................5

*Am. Horse Protection Ass'n, Inc. v. Veneman*,
  200 F.R.D. 153 (D.D.C. 2001) ..................................................................................9

*\*Amador County, Cal. v. Salazar*,
  640 F.3d 373 (D.C. Cir. 2011) ........................................................................ *passim*

*America's Cmty. Bankers v. FDIC*,
  200 F.3d 822 (D.C. Cir. 2000) ..................................................................................9

*Animal Legal Defense Fund v. Glickman*,
  154 F.3d 426 (D.C. Cir. 1998) (en banc) ................................................................10

*Arcia v. Fla. Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014) ................................................................................8

*Cellwave Tele. Servs. v. FCC*,
  30 F.3d 1533 (D.C. Cir. 1994) ................................................................................14

*Cobell v. Babbitt*,
  91 F. Supp. 2d 1 (D.D.C. 1999) ..............................................................................15

*Connecticut v. U.S. Dep't of the Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) ...................................................................4, 6, 9

*Consumer Federation of Am. v. FCC*,
  348 F.3d 1009 (D.C. Cir. 2003) ................................................................................9

*D.C. Appleseed Ctr. for L. & Just., Inc. v. D.C. Dep't of Ins.,*
  *Sec., & Banking*,
  54 A.3d 1188 (D.C. Cir. 2012) ..................................................................................8

*Florida House of Representatives v. Crist*,
  999 So. 2d 601 (Fla. 2008) ......................................................................................13

*Gaming Corp. of. America v. Dorsey & Whitney*,
  88 F.3d 536 (8th Cir. 1996) ....................................................................................10

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ..................................................................................................7

*Hyatt v. U.S. Patent & Trademark Office*,
   110 F. Supp. 3d 644 (E.D. Va. 2015) ....................................................................15

*Indian Educators Fed'n Local 4524 of Am. Fed'n of Teachers, AFL-CIO v.
   Kempthorne*,
   541 F. Supp. 2d 257 (D.D.C. 2008) .......................................................................15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................................9

*Match E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ...........................................................................................7, 10

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014) ..............................................................................8

*Michigan v. Bay Mills Indian Cmty.*,
   572 U.S. 782 (2014) ..............................................................................................10

*Miller v. Clinton*,
   687 F.3d 1332 (D.C. Cir. 2012) ..............................................................................6

*Organic Trade Ass'n v. United States Dep't of Agric.*,
   370 F. Supp. 3d 98 (D.D.C. 2019) ........................................................................15

*Patchak v. Salazar*,
   632 F.3d 702 (D.C. Cir. 2011) ................................................................................7

*People for the Ethical Treatment of Animals, Inc. v. U.S. Dept. of Agriculture*,
   7 F. Supp. 3d 1 (D.D.C. 2013) ................................................................................7

*Pueblo of Santa Ana v. Kelly*,
   104 F.3d 1546 (10th Cir. 1997) .............................................................................13

*S. Envtl. Law Ctr. v. Bernhardt*,
   432 F. Supp. 3d 626 (W.D. Va. 2020) .....................................................................9

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) ................................................................................8

*Sierra Club v. U.S. Fish & Wildlife Serv.*,
   245 F.3d 434 (5th Cir. 2001) ..................................................................................5

*Starpower Comm'ns v. FCC*,
   334 F.3d 1150 (D.C. Cir. 2003) .............................................................................14

*United Food & Commercial Workers v. NLRB*,
   222 F.3d 1030 (D.C. Cir. 2000) .............................................................................14

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ..............................................................................................15

**Statutes & Constitution**

5 U.S.C. § 706 ........................................................................................................5, 6

18 U.S.C. § 1081 ......................................................................................................14

25 U.S.C. §§ 2701 *et seq* .........................................................................................10

25 U.S.C. § 2702 ................................................................................................10, 11

25 U.S.C. § 2710 ................................................................................................ *passim*

31 U.S.C. 5363 ........................................................................................................14

*Fla. Const. Art. X, § 30 ..................................................................................... *passim*

Fla. Const. Art. XI, § 3 ............................................................................................13

Fla. Stat. § 849.08 ...................................................................................................13

Fla. Stat. § 849.14 ...................................................................................................13

**Rules**

L.R. Civ. 7(n) .........................................................................................................4, 6

**Other Authorities**

*Advisory Op. to the Atty. Gen. re: Voter Control of Gambling in Florida*,
    215 So. 2d 1209 (Fla. 2017) ...............................................................................13

2021 Compact. *Florida Pari-mutuels Sign Marketing Agreement with Seminole
    Tribe to Promote New Sports Betting App* (Oct. 28, 2021), *available at*
    https://www.wtsp.com/article/news/regional/florida/florida-pari-mutuels-
    marketing-agreement-seminole-tribe-of-florida/67-f02a462e-17de-4f7b-90a8-
    6f308850f259 ........................................................................................................9

Fla. Dept. of State, Division of Elections https://results.elections.myflorida.com
    (Nov. 2018 General Election Results, Constitutional Amendments) .....................12

Plaintiffs, Monterra MF, LLC, Armando Codina, James Carr, Norman Braman, 2020 Biscayne Boulevard, LLC, 2060 Biscayne Boulevard, LLC, 2060 NE 2nd Ave., LLC, 246 NE 20th Terrace, LLC, and No Casinos, submit this reply in support of their motion for summary judgment to invalidate erroneous agency action and obtain declaratory relief:

## INTRODUCTION

The parties agree that the Indian Gaming Regulatory Act ("IGRA") governs, but the scope of IGRA's requirements is very much in dispute. Federal Defendants advocate an incoherent reading of IGRA that, contrary to the statutory text and binding authority, would relegate the compact approval process to a dead letter, rubber stamp. According to Defendants' interpretation of IGRA, the Secretary has no obligation to undertake any analysis whatsoever if she decides to take "no action" and therefore approve a compact by operation of law. *See* DE 41 at 26-31. The problem for Defendants is that the D.C. Circuit in *Amador County v. Salazar*, 640 F.3d 373, 378-79 (D.C. Cir. 2011), rejected that view and definitively concluded that if a compact violates the law, it cannot be deemed approved, even by operation of law.

Defendants not only fail to address the D.C. Circuit's decision in *Amador*, but make many of the same standing arguments about injury-in-fact, causation, and redressability rejected there:

| Defendants' Arguments Here | *Amador County v. Salazar*, 640 F.3d 373, 378-79 (D.C. Cir. 2011) |
|---|---|
| "Absent the Requisite Jurisdiction to Do so, the Court Should Not Reach the Merits in this Case." DE 41 at 7. | "For the purposes of standing, we assume the merits in favor of the plaintiff." 640 F.3d at 378. |
| "Neither the Complaint, nor any of the filings submitted in connection with their Motion, demonstrates any of the Plaintiffs have the requisite standing" based on their contention "if the Compact is implemented such that the Tribe expands is gaming on its Hollywood or if West Flagler—decides to partner with the Tribe to offer online sports betting at a | "[I]n order to establish an injury in fact, Amador County need demonstrate only that it will be injured by the planned gaming and thus has a cognizable interest in prohibiting it. To this end, the County has alleged, among other things, that the planned gaming would increase the County's infrastructure costs and impact the character of the community….We agree |

1

| Defendants' Arguments Here | *Amador County v. Salazar*, 640 F.3d 373, 378-79 (D.C. Cir. 2011) |
|---|---|
| proposed new facility, such circumstances will lead to purported increases in traffic, crime, and congestion, and will also reduce open spaces and property values." DE 41 at | with the district court that the County's allegations are more than sufficient to establish concrete and particularized harm." 640 F.3d at 378. |
| "[T]he purported injuries Plaintiffs identify all depend on choices either the Tribe, West Flagler, or other third parties may or may not make at some unknown point in the future, and thus fail to demonstrate the causal connection required to establish standing." DE 41 at 10-11. | "Because the Tribe may proceed with gaming only with secretarial approval, there is a direct causal connection between the Secretary's no-action approval and the alleged harm." 640 F.3d at 378. |
| "Plaintiffs must show it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision of this Court." DE 41 at 11. | "The injury is also redressable because if the County succeeds on the merits and obtains a declaration that the Rancheria does not qualify as Indian land, the Secretary would have to reject the compact." 640 F.3d at 378. |
| "[A] finding that the deemed approval violated the APA would not redress their purported harms." DE 41 at 24. | "Either the compact meets the requirements of IGRA, in which case we must reject the challenge, or it does not, in which case we must direct the Secretary to disapprove the compact." 640 F.3d at 382-83. |

Indeed, *Amador* unsurprisingly and correctly applied governing precedent and applies with even greater force to the massive gambling expansion approved through the Compact negotiated here that guarantees a minimum payment from the Seminole Tribe to the State of Florida of $2.5 billion.

The Defendants here also continue to ignore the many ways in which the 2021 Compact they approved violates state and federal law. As explained in Plaintiffs' Memorandum in Support of Summary Judgment, the 2021 Compact is the greatest expansion of illegal gambling in Florida's history and circumvents the Florida Constitution's mandate that "Florida voters shall have the exclusive right to decide whether to authorize casino gambling in the State of Florida." Art. X, § 30(a), Fla. Const. ("Amendment 3"). Under Amendment 3, unlawful gambling cannot be made

lawful absent compliance with the strict, constitutionally mandated process for approving the expansion of gambling. The Seminole Tribe openly and enthusiastically supported the adoption of Amendment 3 because it helped them secure the benefit of a casino gambling monopoly in Florida.

Despite the State of Florida's failure to comply with Amendment 3, Defendants approved the 2021 Compact by operation of law (the "Compact Approval"), thereby granting the Seminole Tribe exclusive rights to engage in Class III games that are unlawful anywhere else in the State, including sports betting, craps, and roulette. The Compact Approval noted that the 2021 Compact was approved "to the extent that it complies with IGRA and existing Federal law." DE 1-5 at 1. Now, Defendants try to rely on that phrase as a basis for saving them from this lawsuit. Yet they cannot establish that the 2021 is consistent with IGRA or federal law. Again, they run headlong into *Amador*, where the D.C. Circuit explained: "we hold that where, as here, a plaintiff alleges that a compact violates IGRA, thus requiring the Secretary to disapprove the compact, nothing in the APA precludes judicial review of a…no-action approval." 640 F.3d at 383.

Any compact approved by operation of law must be "consistent with the provisions of [IGRA]." 25 U.S.C. § 2710(d)(8)(C); *see also Amador Cnty.*, 640 F.3d at 381. The extent to which the 2021 Compact is or is not consistent with IGRA must be determined as a matter of law by this Court. The Compact Approval is inconsistent with IGRA on its face, because IGRA does not authorize gambling outside of Indian lands, and the 2021 Compact clearly authorizes sports betting off Indian lands. The Compact Approval fundamentally violates Amendment 3's voter approval requirement, which gives Florida voters the exclusive right to approve gambling expansion. The Compact Approval also violates independent federal laws, including the Wire Act and the Unlawful Internet Gambling Enforcement Act ("UIGEA"), by authorizing gambling outside of Indian lands and allowing the use of the Internet or interstate payment transmissions where sports

betting is illegal. Defendants cannot be allowed to ignore these violations of state and federal law under the guise of "compliance" with IGRA.[1]

## THE ADMINISTRATIVE RECORD

Although this Court can resolve Plaintiffs' claims as a matter of law, Defendants' misstatements regarding the administrative record warrant independent discussion. At issue for this Court's review is unlawful administrative action approving a Compact between the Seminole Tribe and the State of Florida. Local Rule 7(n) governing judicial review of administrative agency actions specifies that, unless otherwise ordered by the Court, the agency "must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint *or simultaneously with the filing of a dispositive motion*, whichever occurs first." LCvR 7(n)(1) (emphasis added). Defendants have refused to comply with this requirement, even though multiple dispositive motions were filed on October 15, 2021. *See, e.g.*, DE 35. Defendants place their own gloss on the governing rule, claiming that "[a]ny such record would not be due until after Federal Defendants answered the Complaint"—altogether ignoring the requirement to file the certified list of contents. DE 35 at 4 n.2 (citing LCvR 7(n)). Defendants cite nothing to support their assertion that "the requirements of Local Civil Rule 7(n) are not triggered" until the Court rules on jurisdiction. DE 41 at 8.[2]

---

[1] References to "DE___" are to the docket entries in this case. Emphasis, internal quotations, and internal citations are omitted unless otherwise indicated.

[2] The cases Defendants rely on as a basis to "defer the lodging the administrative record" do not support their failure to comply with the Local Rule. DE 41 at 8-9. Indeed, the case law illustrates exactly why Defendants' position here is untenable. In *Connecticut v. U.S. Dept. of Interior*, for example, the district court granted federal defendants' motion to affirmatively waive compliance with Local Civil Rule 7(n). 344 F. Supp. 3d 279, 294 (D.D.C 2018). The need for relief from the Local Rule expressly undercuts Federal Defendants' assertion here that the rule simply does not apply, and they failed to seek relief from the rule's requirements. DE 41 at 8. More importantly, none of Defendants' cases involved pending summary judgment motions. Here, Plaintiffs have moved for summary judgment and the parties have agreed to an expedited schedule.  Defendants

Defendants then proceed to mischaracterize the permissible contours of this Court's review. They concede that summary judgment is "'the proper mechanism' for resolving APA claims," but then suggest that the Court must determine the merits based solely on the agency's view of the record. *See* DE 41 at 7-8 ("[A]ny such merits ruling in this APA case must be made on an administrative record Federal Defendants would present."). Defendants simultaneously assert that they can withhold the record unilaterally—and by extension, merits review under their misguided theory—because they filed a motion to dismiss. DE 41 at 7-9. That simply is not the law.

The APA expressly authorizes review where an agency acts "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or makes findings or conclusions that are "not in accordance with law." 5 U.S.C. § 706(2). When an APA claim is limited to interpreting a governing statute, the reviewing court "is competent to perform [that task] without the administrative record." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 267 (D.C. Cir. 2001) (quoting *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 440 n.37 (5th Cir. 2001)). Defendants claim that *American Bankers* "fail[s] to support" reaching the merits here, yet they cannot distinguish the case or otherwise address its holding. Here, Plaintiffs assert that Defendants lacked authority under IGRA to approve a compact that expands gaming beyond Indian lands, and that IGRA requires a determination as to whether the 2021 Compact violates state or federal law. DE 37-4 at 15-19; DE 37-4 at 19, 23; *see also Amador Cnty.*, 640 F.3d at 380 ("[O]nly lawful compacts can become effective, but someone—*i.e.*, the courts—must decide whether those provisions are in fact lawful."). This Court is more than competent to

---

cannot unilaterally decide that the rules do not apply to them simply because they do not want to compile the administrative record, and then chastise the Plaintiffs for citing to the only known communication from Defendants regarding the 2021 Compact.

interpret IGRA as a matter of law. *See Miller v. Clinton*, 687 F.3d 1332, 1340 (D.C. Cir. 2012); *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 307-08 (D.D.C. 2018). As specifically provided in the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. And that is exactly what Plaintiffs here have asked the Court to do.

Defendants fault Plaintiffs for "attempt[ing] to place a pseudo-record" before this Court. DE 41 at 7. But Plaintiffs' Memorandum in Support of Summary Judgment clearly and repeatedly asserts legal arguments independent of the administrative record. *E.g.*, DE 37-4 at 15-19. To the extent the Court is inclined to consider the administrative record, Plaintiffs have reserved all rights in light of Defendants' refusal to identify the proposed contents of the record. DE 37-4 at 9 n.4. In any event, it defies logic that Defendants' 12-page letter approving the 2021 Compact would somehow not be part of the administrative record. DE 1-5. That document clearly illustrates Defendants' violations of the APA.[3] If Defendants believe some other document is necessary for this Court's consideration, then they are required to identify it through the procedures set forth by the governing rule. Contemporaneously with the filing of this reply and out of an excess of caution, Plaintiffs move for an order directing the Defendants to file the certified list of contents of the administrative record, as required by Local Rule 7(n).

---

[3] As the APA and the local rules recognize, either party may alert the Court to documents necessary to the Court's decision. 5 U.S.C. § 706; LCvR .7(n)(2). Any contention that the Compact Approval letter constitutes a "new record made initially in the reviewing court" is specious. DE 41 at 7 n.4.

**PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT**

**I.      Plaintiffs Have Standing to Challenge Defendants' Approval of the 2021 Compact**

In opposition to summary judgment, Defendants continue to press the same arguments they asserted in their motion to dismiss—namely, that Plaintiffs lack standing and therefore the Court lacks jurisdiction. DE 41 at 9-26. As explained in Plaintiffs' Opposition to the Motion to Dismiss, which is incorporated in its entirety by reference, Defendants spill pages of ink on the requirements for standing, but altogether ignore D.C. Circuit and Supreme Court precedent that vitiates their argument. Governing case law has repeatedly held that neighboring landowners "no doubt" have Article III and prudential standing to challenge the government's approval of a Compact governing Indian gaming. *Patchak v. Salazar*, 632 F.3d 702, 705 (D.C. Cir. 2011); *see also Match E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 214 (2012); *Amador Cnty. v. Salazar*, 640 F.3d 373, 378-79 (D.C. Cir. 2011). Defendants fail to address any of these binding authorities that entirely dispose of their standing arguments.

Defendants also fail to acknowledge the independent grounds here for establishing standing. As explained in the Complaint and in the declarations in support of standing, the individual Plaintiffs have opposed casino-style gambling in South Florida for decades and specifically contributed financially to Plaintiff's No Casinos' efforts to oppose the expansion of gambling, which helped secure voter approval of Amendment 3—the very law that the Compact and the Compact Approval has violated. DE 1 ¶¶ 23-25; DE 37-5 ¶¶ 5, 12; DE 37-6 ¶ 8; DE 37-7 ¶¶ 1, 11-12. In *People for the Ethical Treatment of Animals, Inc. v. U.S. Dept. of Agriculture*, 7 F. Supp. 3d 1, 8 (D.D.C. 2013), this Court held that the Plaintiff had standing because its "discrete programmatic concerns [were] being directly and adversely affected by" the agency's failure to enforce the underlying statute. Plaintiff No Casinos also independently has standing because the Compact Approval requires it to divert resources to oppose the unlawful

7

Compact Approval and address the resulting unlawful expansion of gambling. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014); *D.C. Appleseed Ctr. for L. & Just., Inc. v. D.C. Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1205 (D.C. Cir. 2012).

Plaintiffs have established each of the requirements for Article III standing. First, their harms are concrete and particularized. Specifically, Plaintiffs have established through sworn declarations and other evidence that they "will be injured by the planned gaming and thus [have] a cognizable interest in prohibiting it." *Amador Cnty.*, 640 F.3d at 378.[4] Contrary to Defendants' assertions, Plaintiffs are not required to show anything more.[5] Defendants' attempt to characterize Plaintiffs' injuries as "hypothetical" falls flat given the comprehensive declarations submitted in support of standing and the admissions of the Seminole Tribe and the pari-mutuel operators, none of which can be contradicted by the Defendants. *See, e.g.*, DE 37-5, 37-6, 37-7, 37-8. Even worse for Defendants, statements directly from the Seminole Tribe and the State of Florida contradict Defendants' implausible suggestion that the Seminole Tribe "might" decide not to offer the full panoply of games allowed under the 2021 Compact. *See* DE 41 at 17. In describing the 2021 Compact, the State of Florida notes that it "expands and modernizes gaming in Florida, including by authorizing . . . intrastate internet sports betting; the addition of Vegas-style craps and roulette, and the establishment of three new casino facilities in South Florida." *West Flagler v. DeSantis*,

[4] This Court is entitled to consider Plaintiffs' affidavits, and defendants do not suggest otherwise. *See Mendoza v. Perez*, 754 F.3d 1002, 1016 n. 9 (D.C. Cir. 2014); *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002).

[5] Defendants misstate the requirements of standing. For example, they criticize Plaintiffs for failing to "demonstrate that the long-standing presence of the Tribe's world-class casino in the area would not instead entice potential tenants to buy a residence from Plaintiffs." DE 41 at 15. Plaintiffs are not required to disprove the government's hypothetical theory about the impact of the gambling facility on their property.

No. 21-cv-02192, ECF 28 at 1 (filed Oct. 19, 2021). The Seminole Tribe has repeatedly noted that the Compact Approval allows it to add several new forms of gaming exclusively made available to the Tribe. And the Seminole Tribe has affirmatively entered multiple contracts with pari-mutuel facilities for the marketing of sports betting allowed under the 2021 Compact. *Florida Pari-mutuels Sign Marketing Agreement with Seminole Tribe to Promote New Sports Betting App* (Oct. 28, 2021), *available at* https://www.wtsp.com/article/news/regional/florida/florida-pari-mutuels-marketing-agreement-seminole-tribe-of-florida/67-f02a462e-17de-4f7b-90a8-6f308850f259.

Second, Defendants do not dispute that they caused or contributed to Plaintiffs' harms by approving the 2021 Compact, despite the many ways it violates state and federal law. Causation is not difficult to establish, and merely requires a showing that the defendants' conduct is a contributory factor to the Plaintiffs' injuries. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also, e.g.*, *Am. Horse Protection Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001). And numerous courts have deemed agency action "fairly traceable" to the alleged harm, thereby satisfy the causation element of standing. *See, e.g.*, *Connecticut*, 344 F. Supp. 3d at 302-04; *S. Envtl. Law Ctr. v. Bernhardt*, 432 F. Supp. 3d 626, 634 (W.D. Va. 2020). Here, it is undisputed that federal approval is a necessary precondition that must be satisfied before the Seminole Tribe can offer new Class III games. 25 U.S.C. § 2710(d)(3)(B). Accordingly, the causal link is satisfied.

Finally, Plaintiffs' injury can be redressed by judicial action vacating the erroneous approval of the 2021 Compact, or declaring that portions of the 2021 Compact are not consistent with IGRA. The D.C. Circuit has consistently held causation and redressability exist where agency action authorizes a third-party to engage in conduct that injures the plaintiff. *See Amador Cnty.*,

640 F.3d at 378; *Consumer Federation of Am. v. FCC*, 348 F.3d 1009, 1012 (D.C. Cir. 2003); *America's Cmty. Bankers v. FDIC*, 200 F.3d 822, 827-28 (D.C. Cir. 2000); *Animal Legal Defense Fund v. Glickman*, 154 F.3d 426, 440-43 (D.C. Cir. 1998) (en banc).

Defendants concede in a footnote that they do not seek dismissal on the basis of prudential standing. DE 41 at 6 n.2. Nor could they. Binding case law leaves them no room to challenge Plaintiffs' prudential standing. The threshold requirement is low—Plaintiffs need only show that they are "arguably within the zone of interests to be protected or regulated by the statute." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012). And *Amador* again unequivocally establishes prudential standing here because "[t]hose in the surrounding community who are impacted by gambling fall within IGRA's zone of interest." *Amador Cnty.*, 640 F.3d at 379.

## II.     The Compact Approval Must Be Set Aside

It is undisputed that IGRA sets forth the permissible scope of a Tribal-State Compact and the Secretary's authority to approve or disapprove it. *Amador Cnty.*, 640 F.3d at 377; *Gaming Corp. of. America v. Dorsey & Whitney*, 88 F.3d 536, 546 (8th Cir. 1996). IGRA has at least three requirements of relevance here: First, a compact must be consistent with the provisions of IGRA. 25 U.S.C. § 2710(d)(8). Second, IGRA specifies that Tribes can only conduct gaming activities that are lawful within the individual state, and conversely cannot engage in gambling activities that are otherwise unlawful in a state. *See* 25 U.S.C. § 2701(5); 25 U.S.C. § 2710(d)(8); *Amador Cnty.*, 640 F.3d at 380. Third, IGRA requires the gaming to be consistent with federal law. 25 U.S.C. § 2710(d)(8). Each are independent grounds for setting aside the Compact Approval here.

### A.     Defendants Ignore IGRA's Express Terms

By its express terms, IGRA governs gaming only on Indian lands and not off Indian lands. 25 U.S.C. §§ 2701, 2702; *see also Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 791 (2014).

As explained in detail in the Memorandum in Support of Summary Judgment, the Compact Approval unlawfully authorizes sports betting activities that extend well beyond Indian lands, which is not within Defendants' statutory grant of authority. DE 37-4 at 15-18. In response, Defendants say nothing. They do not dispute the expansive scope of the proposed sports betting operation, which they approved by operation of law. They do not even attempt to defend the obvious off-reservation implications of the Compact Approval. And they offer no prior precedent for approving gaming off Indian lands through the "hub and spoke" model of sports betting. Major provisions of the Compact plainly purport to govern casino gambling that does not occur on Indian lands. Defendants had no authority to conclude that the gaming was permissible simply because the sports betting servers (the "hub" of the operation) would be located on Indian lands. They cannot override IGRA's "on Indian lands" requirement by accepting the 2021 Compact's self-serving definition.

Additionally the Compact Approval violates IGRA because it enriches non-tribal entities and fails to "to ensure that the Indian tribe is the primary beneficiary of the gaming operation." 25 U.S.C. § 2702(2). The 2021 Compact purports to authorize non-tribal gambling entities to solicit and execute sports bets outside of Indian lands, in exchange for at least 60% of the net profit they generate. DE 1-1 at 15, 17. IGRA does not authorize Defendants to confer such extra-tribal benefits. Because the hub and spoke scheme is inconsistent with IGRA's requirement that the Tribe is the primary beneficiary, the Compact Approval is contrary to law.[6]

---

[6] In a footnote, Defendants claim that Plaintiffs "lack standing to challenge the alleged conferral of benefits to a third party." DE 41 at 11 n.6. They misunderstand the argument. Plaintiffs assert that the hub and spoke scheme, which Defendants approved, is inconsistent with IGRA and therefore renders the approval contrary to law. That is precisely the type of challenge allowed under the APA. As explained in the Memorandum in Support of Summary Judgment, this Court is authorized to rule that the hub and spoke scheme is inconsistent with IGRA because it violates IGRA's "primary beneficiary" requirement. DE 37-4 at 29.

When a Compact violates the very premise of IGRA, it cannot stand. *Amador Cnty.*, 640 F.3d at 381. Indeed, Defendants concede that "IGRA obligates the Secretary to disapprove (rather than not act upon) a compact that violates provisions of IGRA." DE 35 at 16. The Compact Approval here exceeds Defendants' authority, is contrary to law, and is inconsistent with IGRA. For all of these reasons, it must be set aside.

### B.   The Compact Approval Unlawfully Circumvents State Gaming Law

In opposing summary judgment, Defendants claim that "neither IGRA nor Interior regulations" require the Secretary "to make 'findings' about the legality of the Compact under federal and state law." DE 41 at 26. But they fail to acknowledge binding case law that holds otherwise. The D.C. Circuit has held: "The Secretary must . . . disapprove a compact if it would violate any of the three limitations in [§ 2710(d)(8)(B)], and those limitations provide the 'law to apply.'" *Amador County*, 640 F.3d at 381. Those three limitations specified by IGRA include violations of: "(i) any provision of [IGRA], (ii) any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or (iii) the trust obligations of the United States to Indians." 25 U.S.C. § 2710(d)(8)(B). And it is undisputed that under IGRA, Class III gaming can only be lawful if "located in a State that permits such gaming for any purpose by any person, organization, or entity." 25 U.S.C. § 2710(d)(1). Indeed, Defendants concede that the compact system is designed to "make use of existing State regulatory systems." DE 35 at 3. Accordingly, the Secretary could not approve a compact that violates or is inconsistent with state law.

Amendment 3 is the central governing state law at issue, yet Defendants do not even mention it in their opposition to summary judgment. Under Amendment 3, which 71.5% of Florida voters approved in 2018, the Florida legislature lost plenary authority over gambling authorization. Florida's Constitution was amended to give voters final and *exclusive* authority over whether to approve casino gambling in Florida. *See* Fla.   Dept. of State, Division of Elections

12

https://results.elections.myflorida.com (Nov. 2018 General Election Results, Constitutional Amendments). Defendants effectively admit that they did not consider this seminal shift in Florida gaming law when considering whether the new forms of gaming proposed in the 2021 Compact were lawful. DE 41 at 28-29.

As explained in the Memorandum in Support of Summary Judgment, governing federal law at times requires agencies to consider state law. DE 37-4 at 23-24. That is true here, where IGRA expressly incorporates state law and requires compliance with state law in order for gaming to be lawful on Indian lands. *See* 25 U.S.C. § 2710(d)(1). Amendment 3 clearly applies to the gambling at issue in this case. Defendants do not and cannot assert that Florida allows sports betting, craps, or roulette. *See*, *e.g.*, Fla. Stat. §§ 849.08, 849.14. Nor do they dispute that new forms of gambling cannot become lawful in Florida absent a citizens' initiative passed consistent with Amendment 3. *Advisory Op. to the Atty. Gen. re: Voter Control of Gambling in Florida*, 215 So. 2d 1209, 1213 (Fla. 2017) ("[F]or casino gambling to be authorized under Florida law, it must be approved by Florida voters pursuant to Article XI, Section 3 of the Florida Constitution.").[7]

---

[7] Federal Defendants wrongfully rely on *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997) for the proposition that the Secretary is not required "to resolve complex issues of state law before allowing a compact to become deemed approved." DE 41 at 28. But the holding in *Pueblo of Santa Ana* is much narrower than Federal Defendants present. There, the only issue was whether the Secretary was required to extensively inquire into state law to determine whether the governor of New Mexico lacked the authority to sign compacts on behalf of the state. *Id.* at 1557. The Court reasoned that because a compact is a contract, the burden on assuring that each party to the contract is authorized to enter into it is on the contracting parties, and the Secretary was not expected to resolve that limited issue. *Id.* That is quite different from the Secretary's explicit statutory requirement here, under the IGRA, to approve the 2021 Compact only if it complies with state law for Class III on gaming lands. *See* 25 U.S.C. § 2710(d)(1)(B); *see also Florida House of Representatives v. Crist*, 999 So. 2d 601, 616 (Fla. 2008). "[W]hat is legal in Florida is legal on tribal lands, and what is illegal in Florida is illegal there." *Id.* at 614. *Pueblo of Santa Ana* did not involve a "no action" compact approval or an interpretation of the extent to which a compact complies with IGRA. Because the Secretary's duty in reviewing the 2021 Compact was to ensure compliance with IGRA, that analysis requires at the very least for the Secretary to confirm whether or not the proposed Class III gaming violates state law.

As explained in the Memorandum in Support of Summary Judgment, the gambling authorized by the Compact Approval was not approved by Florida voters, and therefore the Compact Approval denied Florida voters their constitutional right to approve any expansion of gambling. DE 37-4 at 24-28. This Court is authorized to interpret state law and determine that the Compact Approval was contrary to law. *See, e.g.*, *Cellwave Tele. Servs. v. FCC*, 30 F.3d 1533 (D.C. Cir. 1994); *Starpower Comm'ns v. FCC*, 334 F.3d 1150 (D.C. Cir. 2003); *United Food & Commercial Workers v. NLRB*, 222 F.3d 1030 (D.C. Cir. 2000).

## C.   The Compact Approval Allows Sports Betting that Violates Federal Law

As explained above, binding case law requires Defendants to disapprove a compact that violates Federal law. *See* pp. 3, 5. Defendants do not deny that the Federal Wire Act and the Unlawful Internet Gambling Enforcement Act ("UIGEA") apply to the Seminole Tribe and the sports betting authorized by the Compact Approval. DE 37-4 at 19-23. As explained in the Memorandum in Support of Summary Judgment, those statutes apply to anyone "engaged in the business of betting or wagering." 18 U.S.C. § 1081; 31 U.S.C. § 5363. Nor do Defendants dispute that under federal law, the point of origin, or location, of a bet or wager is distinct from the location of the reception of the bet or wager. DE 37-4 at 7. A bet or wager initiated outside of Indian lands is therefore subject to federal prohibitions on gambling.

As explained above, Defendants did not have authority to approve sports betting outside of Indian lands. *See* pp. 10-12, above. Nor did they have authority to approve a Compact that would allow interstate sports betting in violation of federal law. DE 37-4 at 20-21. Defendants respond to neither of these points raised in Plaintiffs' Memorandum in Support of Summary Judgment. And they provide no basis to suggest that either statute's "safe harbor" provisions would be applicable here. Accordingly, Plaintiffs are entitled to summary judgment as a matter of law.

14

**III.    Declaratory Relief Is Necessary and Appropriate**

Federal Defendants are wrong when they assert that Plaintiffs' requested relief "goes beyond what is authorized under the APA." DE 41 at 24. When, as here, the case and controversy requirement is met and the court has subject matter jurisdiction, declaratory relief is clearly available. *See, e.g.*, *See Organic Trade Ass'n v. United States Dep't of Agric.*, 370 F. Supp. 3d 98, 106 (D.D.C. 2019); *Indian Educators Fed'n Local 4524 of Am. Fed'n of Teachers, AFL-CIO v. Kempthorne*, 541 F. Supp. 2d 257, 266-267 (D.D.C. 2008); *Hyatt v. U.S. Patent & Trademark Office*, 110 F. Supp. 3d 644, 654 (E.D. Va. 2015). Congress intended the Declaratory Judgment Act "to place a remedial arrow in the district court's quiver." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "The decision of whether to issue a declaratory judgment on any given legal issue is within a district court's 'sound exercise of its discretion.'" *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 39 (D.D.C. 1999) (quoting *Wilton*, 515 U.S. at 288).

This Court is authorized to exercise its discretion to grant declaratory relief. The Compact Approval noted that the 2021 Compact was approved "to the extent that it complies with IGRA and existing Federal law," DE 1-5 at 1, but Defendants now suggest that this Court cannot declare what that "extent" is or what remains of the Compact when judged by the standard enunciated in the Compact Approval letter. *See* DE 41 at 27-28, 31. Defendants claim they may (1) review a gaming compact that facially violates federal law; (2) do nothing and deem the Compact approved by operation of law, but state explicitly—without any further discussion of any of the Compact's provisions—that any such "approval" is "only to the extent that it complies with" federal law; and then lastly, before this Court (3) state that the Court cannot declare what of the Compact survives when judged by the Defendants' own stated standard. This Court should utterly reject this position—as it renders IGRA and the Declaratory Judgment Act into dead letters.

The relief sought by Plaintiffs does not "extend" this Court's jurisdiction, as the Defendants wrongly contend. DE 41 at 31. Rather, Plaintiffs merely ask the Court to do what the Defendants still cannot do to date—namely, answer whether and to what extent the Compact complies with the governing statutes.

Because the Compact Approval voids the vote of 5,676,456 Floridians who chose to retain the absolute authority to expand gambling throughout the State, which this Compact does, and because it was beyond the Defendants' statutory authority, this Court should exercise its discretion to declare that the Compact Approval is contrary to law.

## CONCLUSION

Plaintiffs respectfully request that this Court enter summary judgment in their favor because Defendants' approval of the 2021 Compact was unlawful.

Respectfully submitted:

/s/ Glenn Burhans
Glenn Burhans, Jr., FL Bar No. 605867*
gburhans@stearnsweaver.com
Robert J. Walters, FL Bar No. 1024733*
rwalters@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON PA
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, Florida 32301
(850) 329-4850

/s/ Eugene E. Stearns
Eugene E. Stearns, FL Bar No. 0149335*
estearns@stearnsweaver.com
Grace L. Mead, FL Bar No. 49896*
gmead@stearnsweaver.com
Jenea M. Reed, FL Bar No. 84599*
jreed@stearnsweaver.com
Coral Del Mar Lopez, FL Bar No. 1022387*
clopez@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida  33130
(305) 789-3200

*Admitted pro hac vice

/s/ Eli J. Kay-Oliphant
Eli J. Kay-Oliphant, D.C. Bar No. 503235
eli.kay-oliphant@sparacinopllc.com
Ryan R. Sparacino, D.C. Bar No. 493700
ryan.sparacino@sparacinopllc.com
SPARACINO PLLC
1920 L Street, NW, Suite 535
Washington, D.C.  20036
(202) 629-3530

## CERTIFICATE OF SERVICE

Pursuant to LCvR 5.3, I hereby certify that on November 1, 2021, I caused to be filed a copy of the foregoing Plaintiffs' Reply in Support of Motion to Dismiss to the Court's CM/ECF system, and service was effected electronically pursuant to LCvR 5.4(d) to all counsel of record.

/s/ Eli J. Kay-Oliphant
Eli J. Kay-Oliphant

17