**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MONTERRA MF, LLC, et al., ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-02513-DLF |
| ) | |
| DEB HAALAND, in her official capacity as ) | |
| Secretary of the United States Department of ) | |
| The Interior, et al., ) | |
| ) | |
| *Federal Defendants*. ) | |
| ) | |

**FEDERAL DEFENDANTS'**
**SUPPLEMENTAL MEMORANDUM**

Federal Defendants Deb Haaland, in her official capacity as Secretary of the Interior, and

the United States Department of the Interior, by and through their undersigned counsel, hereby

file this supplemental memorandum.

Respectfully submitted this 9th day of November, 2021.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
HILLARY K. HOFFMAN, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
OF COUNSEL:                     Washington, DC 20044
JODY H. SCHWARZ                 Telephone:  (202) 616-3148
Senior Attorney                 rebecca.ross@usdoj.gov
Office of the Solicitor         hillary.hoffman@usdoj.gov
Division of Indian Affairs      *Attorneys for Federal Defendants*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND ......................................................................................................................5

    I.      The Indian Gaming Regulatory Act...............................................................5

    II.    The Unlawful Internet Gambling Enforcement Act .....................................7

    III.   The Wire Act.................................................................................................8

ARGUMENT ...........................................................................................................................8

    I.      The Compact's Deemed Approval Does Not Violate IGRA.........................8

    II.    The Compact Permissibly Encompasses, Consistent with IGRA, the Tribe's and State's Agreement that the Sports Betting is Deemed to Occur on the Tribe's Indian Lands for Regulatory Purposes....................................................................12

    III.   Plaintiffs Have Not Established that the Compact's Deemed Approval Violates Florida Law, the UIGEA, or the Wire Act................................................14

        A.  Neither IGRA Nor *Amador County* Mandates the Secretary to Take Action on a Compact Based on Other Federal Laws or State Law..............................15

        B.  Plaintiffs Have Failed to Establish that the Compact's Deemed Approval Violates Federal Law, the UIGEA, or the Wire Act in Any Event .......................................19

           i.  The Court Should Reject Plaintiffs' Contentions Regarding State Law .........19

          ii.  Plaintiffs Failed to Establish Any UIGEA Violation .....................................21

          iii.  Plaintiffs Failed to Establish Any Wire Act Violation ..................................22

        C.  Federal Defendants' Position Here Does Not Contradict Past Federal Government Positions or Case Law Regarding Internet Gaming ..........................24

    IV.   The Compact's Deemed Approval Does Not Impermissibly Extend Exclusivity to the Tribe.................................................................................................27

    V.    The Administrative Record.........................................................................28

CONCLUSION......................................................................................................................30

## INTRODUCTION

Pursuant to the Court's order dated November 5, 2021, and its instruction during the hearing held on that same date, Federal Defendants Deb Haaland, in her official capacity as Secretary of the Interior ("Secretary"), and the United States Department of the Interior ("Interior") (collectively, "Federal Defendants"), hereby respond to the merits arguments presented by Plaintiffs Monterra MF, LLC et al. ("Plaintiffs") in connection with their *Motion for Summary Judgment* (ECF 37).[1]

This suit involves a challenge to the approval, by operation of law ("deemed approval"), of a Tribal-State Compact ("Compact") negotiated by and entered into between the State of Florida ("State" or "Florida") and the Seminole Tribe of Florida ("Tribe").  Plaintiffs' suit seeks relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

Plaintiffs challenge the Compact on several grounds.  They attack the Compact as a whole on the basis that it violates Florida law and the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-21 ("IGRA") because, they contend, the Compact improperly extends to the Tribe the exclusive right to offer certain games and "enriches non-Tribal entities."  ECF 37-4 at 10-12, 32-38.  Plaintiffs further attack the Compact's sports betting provisions specifically, on the basis that they too violate IGRA and Florida law, as well as the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361-67 ("UIGEA"), and the Wire Act of 1961, 18 U.S.C. § 1084 ("Wire

---

[1] Federal Defendants understand the Court's order as pertaining only to the portion of Plaintiffs' motion concerning summary judgment, and thus do not provide further argument in opposition to the portion of the motion seeking preliminary injunctive relief, beyond stating that the reasons provided herein demonstrate why Plaintiffs are not likely to succeed on the merits of their claims.  By providing the responses herein, Federal Defendants do not waive or otherwise concede arguments and defenses, and Federal Defendants preserve all arguments and defenses in this and any future proceeding.

Act"), on the grounds that the Compact "authorizes" online sports betting occurring off of the Tribe's Indian lands, in a jurisdiction—Florida—where they contend online sports betting is "illegal." ECF 37-4 at 12, 28-32.

Federal Defendants agree that under federal law, the location of the bettor determines where the bet is placed, *see Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 792-93 (2014), and thus federal law as to the location of the better cannot be changed or altered through a tribal-state compact. Accordingly, if a bet is placed within Florida, but outside the confines of the Tribe's Indian lands, the bet occurs outside of Indian lands and must be authorized by state law, rather than IGRA. *See*, *e.g.*, *State of Cal. v Iipay Nation of Santa Ysabel*, 898 F.3d 960, 968-69 (9th Cir. 2018) ("*Iipay*"). Contrary to Plaintiffs' arguments, however, these requirements of federal law fail to establish that the Compact violates IGRA or any other provision of law.

Plaintiffs allege that "the sports betting activities will not be 'on Indian lands' but will extend well beyond Indian lands," and thus the Secretary's deemed approval was an "erroneous decision" that placed "the Compact's self-serving definition over IGRA's requirements," "contrary to law." ECF 37-4 at 26. This characterization reflects a misunderstanding of the Compact, as well as compacting generally between tribes and states. The State and Tribe are free to denominate where the gaming occurs for state or tribal law purposes, and moreover, IGRA permits the Tribe and the State to allocate jurisdiction and regulatory authority over the gaming activity addressed in the Compact consistent with federal law, including IGRA. 25 U.S.C. § 2710(d)(3)(C). Federal Defendants contend that for federal law purposes, and consistent with federal law, the online sports betting provisions in the Compact reflect a permissible hybrid approach wherein gaming activity that occurs off of the Tribe's Indian lands is authorized under state law, and gaming activity that occurs on Indian lands is authorized by

IGRA pursuant to the Compact.  Nothing in IGRA or other federal law prohibits such a hybrid approach as to the authorizing of Class III gaming consistent with IGRA.  Additionally, IGRA allows the Tribe and the State to negotiate over, and agree to allocate, regulatory jurisdiction to the Tribe over all the gaming activity referenced in the Compact, including sports betting. 25 U.S.C. § 2710(d)(3)(C)(i)-(ii).  And while the Compact only authorizes the gaming activity that occurs on Indian lands, the Tribe may be designated by the State, through the Compact, to regulate activities that occur off of its Indian lands that are "directly related to" that gaming, *see id.* § 2710(d)(3)(C)(vii), including regulating how and under what conditions a person in Florida can place an online sports wager through the Tribe's online sports betting app.

The Court thus should reject Plaintiffs' arguments, because the Compact permissibly only authorizes gaming that occurs on the Tribe's Indian lands, consistent with IGRA, and does not and could not authorize activity occurring off of the Tribe's Indian lands.  When the Compact was presented to the Secretary, she was not presented with a decision whether to "authorize" persons in Florida to place an online sports wager with the Tribe when they are physically located off of the Tribe's Indian lands.  The state law ratifying the Compact had already done that.  *See* Appendix at AR099-108, filed concurrently herewith.[2]  As a result, the question for the Secretary was instead whether to approve, consistent with IGRA, the gaming activities that occur on Indian lands, and whether to approve, disapprove, or take no action on the Compact in light of the provisions reflecting agreement by the Tribe and the State that the gaming activity was deemed to occur on Indian lands for *regulatory* purposes.  It was entirely permissible for the

---

[2] Consistent with Local Civil Rule 7(n), excerpts from the administrative record cited herein are filed with the Court as an Appendix to this pleading.  When administrative record documents are cited in their entirety, the entire document is provided in the Appendix.  Also consistent with Local Civil Rule 7(n), Federal Defendants did not file the entire administrative record with the Court, but will do so upon the Court's request.

Secretary to take no action on the Compact to allow it to be considered as approved by operation of law, to the extent consistent with IGRA.

State law authorizes persons in Florida to place the wagers at issue with the Tribe within Florida but off of the Tribe's Indian lands.  The Compact's deemed approval, therefore, does not "authorize" gaming that is "illegal" in the State.  Appendix at AR099-108.  As the Florida Attorney General stated, "Plaintiffs are wrong that online sports betting is illegal in Florida off Indian lands."  ECF 47 at 13.  The Compact is not to the contrary.  *See* ECF 1-1 at 21 (the "Tribe is authorized to operate [the games set forth in the Compact] on its Indian lands, as defined by [IGRA], in accordance with the provisions of this Compact").  To be sure, the Compact states, under a heading titled "Authorization and Location of Covered Games," that sports wagers placed off of the Tribe's Indian lands are "deemed to take place exclusively where received at the location of the servers or other devices used to conduct such wagering activity at a Facility on Indian lands." *Id.*  But as noted above, the State and Tribe are free to agree, for state law purposes, as well as for regulatory purposes under the Compact, that the gaming activity is deemed to occur on the Tribe's Indian lands, consistent with IGRA and other federal laws.  Thus, the Compact not only complies with federal law, it does not violate state law or any state-law specific mandates that limit the authority of the State to have entered into and ratified the Compact.  Moreover, Plaintiffs have failed to establish that the Compact's deemed approval violates the Wire Act or UIGEA in any way.

For all of these reasons and those already submitted, Federal Defendants respectfully request that the Court reject Plaintiffs' request for summary judgment on its claims.

## BACKGROUND

I.      **The Indian Gaming Regulatory Act**

The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-21 ("IGRA"), governs gaming on

"Indian lands," which IGRA defines as including "all lands within the limits of any Indian

reservation," as well as "any lands title to which is held in trust by the United States for the

benefit of any Indian tribe" or lands "held by any Indian tribe . . . subject to restriction by the

United States against alienation and over which the Indian tribe exercises government power."

25 U.S.C. § 2703(4)(A)-(B).  It is undisputed that the Tribe has lands that qualify as "Indian

lands" under IGRA in seven distinct locations throughout Florida, *see* ECF 1-1 at 21-22, and the

Tribe previously entered into a tribal-state compact with the State in 2010 and has engaged in

gaming pursuant to that compact up until the time the new Compact went into effect.  ECF 1 at

18-19 (¶ 57), 22 (¶ 69).  *See also* ECF 1-1 at 3 (II.F).  The 2021 Compact carries forward the

gaming permitted by the 2010 Compact, *see*, *e.g.*, *id.*, and further permits the Tribe to offer

additional table games, including craps and roulette.  ECF 1-1 at 21 (Section III.FF) (defining

"Tables Games" as including certain enumerated games).

IGRA permits the Secretary "to approve any Tribal-State compact entered into between

an Indian tribe and a State governing gaming on Indian lands of such Indian tribe."  25 U.S.C.

§ 2710(d)(8)(A).  IGRA also provides that the Secretary "may" disapprove a compact if it

violates (1) "any provision of this chapter," *i.e.*, IGRA; (2) "any other provision of Federal law

that does not relate to jurisdiction over gaming on Indian lands"; or (3) "the trust obligations of

the United States to Indians." *Id.* § 2710(d)(8)(B).  IGRA further states that

> If the Secretary does not approve or disapprove a compact described in
> [§ 2710(d)(8)(A)] before the date that is 45 days after the date on which the
> compact is submitted to the Secretary for approval, the compact shall be

considered to have been approved by the Secretary, but only to the extent the compact is consistent with [IGRA].

*Id.* § 2710(d)(8)(C).

Consistent with this provision and Section 2710(d)(8)(A), Interior regulations set forth what must be submitted to the Secretary to commence the statutory 45-day review period.  To ensure that the submitted compact has been "entered into" by both the Tribe and the State, *see id.* § 2710(d)(8)(A), 25 C.F.R. § 293.8 requires the Tribe and the State to submit (1) an original signed copy of the compact; (2) a "tribal resolution or other document" that certifies "the tribe has approved the compact or [compact] amendment in accordance with applicable tribal law"; and (3) "Certification from the Governor or other representative of the State that he or she is authorized under State law to enter into the compact or amendment."  25 C.F.R. § 293.8(a)-(c).

On June 21, 2021, the Tribe transmitted to Interior an original signed copy of the Compact to the Secretary, together with a tribal resolution confirming that the Tribe approved the Compact consistent with tribal law; and the State submitted a copy of the state law ratifying the Compact. *See* Appendix.  This submission satisfied 25 C.F.R. § 293.8, thus commencing the Secretary's 45-day statutory review period permitted by IGRA.  That review period expired on August 5, 2021, before the Secretary took any action to either approve or disapprove the Compact.  At that point, the Compact was "considered to have been approved," but "only to the extent it is consistent with [IGRA]."  25 U.S.C. § 2710(d)(8)(C).  Thereafter, pursuant to IGRA's requirements, *see* § 2710(d)(8)(D), the Secretary published notice of such deemed approval in the *Federal Register*. *See Indian Gaming; Approval by Operation of Law of Tribal-State Class III Gaming Compact in the State of Florida*, 86 Fed. Reg. 44,037, 44,037 (Aug. 11, 2021).

## II.     The Unlawful Internet Gambling Enforcement Act

"The UIGEA was passed to regulate online gambling."  *Iipay*, 898 F.3d at 964 (citing 31 U.S.C. § 5361).  The UIGEA does not provide a private right of action, but instead permits either the United States or a state attorney general to commence civil proceedings "to prevent or restrain a restricted transaction" encompassed by the statute. 31 U.S.C. § 5365(b).[3]  The UIGEA "does not make gambling legal or illegal directly."  *Iipay,* 898 F.3d at 965.  Rather, the statute prohibits a person "engaged in the business of betting or wagering" from "knowingly accept[ing], in connection with the participation of another person in unlawful Internet gambling," certain financial payments.  31 U.S.C. § 5363.  *See also Iipay*, 898 F.3d at 965.  And, "unlawful internet gambling occurs" when a person uses the Internet, at least in part, "to place, receive, or otherwise knowingly transmit" a wager when located in a jurisdiction where it is unlawful to do so under federal or state law.  31 U.S.C. § 5362(10)(A).

"[T]he UIGEA does not prohibit otherwise legal gambling"; the statute instead "create[s] a system in which a 'bet or wager' must be legal both where it is 'initiated' and where it is 'received.'"  *Iipay*, 898 F.3d at 965.  *See id.* at 965-67 (concluding that even if online gaming at issue was "completely legal in the place where the bet is accepted," *i.e.,* on the Indian tribe's Indian lands, "the bets are not legal in the jurisdiction where they are initiated," *i.e.*, California, and "[t]hus, when Iipay accepts financial payments over the internet as part of those bets or wagers, Iipay violates the UIGEA").

---

[3] The UIGEA also imposes criminal penalties for violations of the statute. *See* 18 U.S.C. § 5366.

### III.     The Wire Act

The Wire Act is a federal criminal statute that consists of two general clauses, each of which prohibits two kinds of wire transmissions, creating four prohibitions in total.  18 U.S.C. § 1084(a).  The first clause bars anyone in the gambling business from knowingly using a wire communication facility to transmit "bets or wagers" or "information assisting in the placing of bets or wagers on any sporting event or contest."  *Id.*  The second clause bars any such person from transmitting wire communications that entitle the recipient to "receive money or credit" either "as a result of bets or wagers" or "for information assisting in the placing of bets or wagers."  *Id.*  The Wire Act does not prohibit "the transmission in interstate or foreign commerce of information for use in news reporting of sporting events or contests." *Id.* Nor does it prohibit "the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State or foreign country where betting on that sporting event or contest is legal into a State or foreign country in which such betting is legal." *Id.*  The Wire Act defines "State" as "a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a commonwealth, territory or possession of the United States." *Id.* § 1084(e).

### ARGUMENT

### I.       The Compact's Deemed Approval Does Not Violate IGRA

Federal Defendants do not dispute that IGRA only affirmatively authorizes "gaming activity" taking place on "Indian lands."  *Bay Mills*, 572 U.S. at 795.  Nor do Federal Defendants dispute that the placement of a wager or bet is "gaming activity" under IGRA—including when the wager is transmitted over the Internet or through other electronic means.  *Iipay*, 898 F.3d at 965-69.  Federal Defendants thus recognize that when persons in Florida physically located off of the Tribe's Indian lands place wagers, they are not doing so on the Tribe's Indian lands.  But

this does not mean that the Compact at issue here violates IGRA, because consistent with federal law, the Compact itself only authorizes gaming activity occurring on the Tribe's Indian lands, even though the Compact reflects broader tribal regulatory authority—as permissibly negotiated between the Tribe and the State—with respect to sports betting.  *See infra* Section II.

Plaintiffs allege that "the sports betting activities will not be 'on Indian lands' but will extend well beyond Indian lands," and thus the Secretary's deemed approval was an "erroneous decision" that placed "the Compact's self-serving definition over IGRA's requirements," "contrary to law."  ECF 37-4 at 26.[4]  Plaintiffs further contend that the Compact's deemed approval "overrides" IGRA's requirements.  *Id.* at 26-27.  Federal Defendants disagree with such characterization, as the Compact only authorizes, and could only authorize, the gaming activity occurring on the Tribe's Indian lands—*i.e.*, all gaming activity occurring on the Tribe's Indian lands, including the receipt of wagers placed off of the Tribe's Indian lands.  That the Compact does not authorize the placement of bets off of the Tribe's Indian lands does not render that wager unlawful, however, because state law—not the Compact—authorizes the placement of such wagers off of Indian lands, and as a matter of state law, it was permissible for the State to deem such gaming to occur on the Tribe's lands.  Plaintiffs' challenge assumes that the State and Tribe sought to alter federal law requirements through the Compact.  That assumption is incorrect: the Compact only authorizes gaming activity that occurs on the Tribe's Indian lands,

---

[4] Under the Compact, the Tribe may offer in-person sports betting to patrons, or online sports betting wherein a patron physically places a wager on the Tribe's Indian lands where it is also received. ECF 1-1 at 5 (defining "Covered Game" and "Covered Gaming Activity" as including "sports betting" among other games); *id.* at 21-2 (authorizing the Tribe to conduct "Covered Games" and "Covered Gaming Activities" on its Indian lands).  Under either scenario, IGRA and the Compact authorizes all of the activity because in both instances, wagers are both placed and received on the Tribe's Indian lands.

and further permissibly allows the Tribe to regulate sports betting, and thus does not violate IGRA.

When the State and the Tribe submitted the Compact to the Secretary, the State had already, through the state law ratifying the Compact, *see* Appendix at AR099-108, authorized persons in Florida to place online sports wagers with the Tribe when such persons were physically located off of the Tribe's Indian lands. Fla Stat. § 285.710(13)(b)(7).  The state law contemplates, for state law purposes, that the placement of wagers off of the Tribe's Indian lands are deemed to occur there.  This is not a novel approach; several other states have enacted similar laws.  For example, the New Jersey Constitution generally prohibits gaming in the state except at casinos in Atlantic City. N.J. Const. art. 4, § 7, ¶ 2(D).  Notwithstanding this limitation, New Jersey enacted a law allowing players throughout the state to place online sports wagers, and deemed such placement to occur at the servers located in Atlantic City. *See* N.S. Stat. Ann. § 5:12-95.20.  Other states have adopted similar laws. *See*, *e.g.*, 42 R.I. Gen. Laws. Ann. § 42-61.2-1(16) (deeming placement of online wagers to occur at facility where received, enacted despite state constitutional provision, R.I. Const. art. VI, § 22, requiring voter referendum on expanding types and location of gaming); Mich. Comp. Laws Ann § 432.304(2) (deeming placement of online sports wagers as being placed at the "internet gaming operator's casino" regardless of where the bet is physically placed).  Thus, for state law purposes, Florida adopted an approach identical to the approach taken in several other states, which deems the placement of online sports betting to occur where the bet is received.  And as the State has explained, this does not run afoul of the Florida Constitution, because Amendment 3—the state constitutional provision generally requiring a citizens' initiative to authorize gaming—excludes from its scope gaming that is conducted on the Tribe's Indian lands for which the Tribe and State have entered

into a tribal-state compact.  Fla. Const. art. X Sec. 30(a) ("[N]othing herein shall be construed to limit the ability of the state or [the Tribe] to negotiate gaming compacts pursuant to the Federal [IGRA] for the conduct of casino gambling on tribal lands . . .").  *Amicus Curiae Brief of the State of Florida in Support of the Federal Government's Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment* at 14-16 (ECF 47 at 18-19) (explaining why the gaming contemplated here falls within the scope of Amendment 3's exception to the citizens' initiative and thus does not violate state law).

The Secretary, in reviewing the Compact, was therefore not presented with a decision whether to "authorize" a person in Florida to place an online sports wager with the Tribe when they are physically located off of the Tribe's Indian lands, as the state law ratifying the Compact had already done that. *See* Appendix at AR104 (authorizing sports betting, and providing that the placement of sports wagers "by players physically located within the state using a mobile or other electronic device" are "deemed to be exclusively conducted by the Tribe where the servers or other devices used to conduct such wagering activity on the Tribe's Indian lands are located."); *id.* ("Games and gaming activities authorized under this subsection and conducted pursuant to a gaming compact ratified and approved . . . do not violate the laws of this state").

The Compact, in contrast, authorizes the Tribe to operate certain games identified in the Compact "on its Indian lands, as defined in [IGRA], in accordance with the provisions of this Compact." ECF 1-1 at 21.  Thus the Compact properly approves, consistent with IGRA, all gaming activity, including the receipt of sports wagers, when received by the Tribe on its Indian lands.  Thus, as a matter of both state law, *see* Appendix at AR104, and as provided by the Compact consistent with IGRA, *see* ECF 1-1 at 16 (Section III.CC.2), the Tribe may accept online sports bets lawfully placed with the State pursuant to State law on its Indian lands.  This

hybrid gaming approach ensures that (1) it is legal under state law for a person in Florida to place an online sports wager if they are not physically located on the Tribe's Indian lands; (2) it is legal under IGRA for the Tribe to receive such wager on its Indian lands; and (3) it is legal for the Tribe to engage in sports betting when the wager is both placed and received on the Tribe's Indian lands.  The Compact's deemed approval, consistent with IGRA, *see* 25 U.S.C. § 2710(d)(8)(A), therefore only authorized the gaming activity contemplated by the Compact that occurs on the Tribe's Indian lands—*i.e.*, the receipt of wagers, including online sports wagers.  There is nothing novel about compacts that contemplate a key component of the gaming activity occurring off of the Indian lands.  For example, compacts have long permitted Indian tribes to offer patrons the opportunity for simulcast wagering, which involves wagering on the tribes' Indian lands on a race occurring off of such lands.  *See Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1053 (9th Cir. 1997) (discussing compacts that governed the tribes' "operation of simulcast wagering" related to horse races occurring off of the tribes' respective Indian lands).

## II.     The Compact Permissibly Encompasses, Consistent with IGRA, the Tribe's and State's Agreement that the Sports Betting is Deemed to Occur on the Tribe's Indian Lands for Regulatory Purposes

Plaintiffs construe certain provisions of the Compact as attempting to "override" IGRA's Indian lands requirement, *e.g.*, ECF 37-4 at 26-27, but such interpretation is flawed.  The Compact provisions deeming the placement of the bet as occurring on Indian lands instead reflect the State's agreement in the Compact that the Tribe *regulates* all sports betting activity— the placement of the wager, as well as its receipt—even if such wager is placed by a person physically located off of the Tribe's Indian lands.

12

IGRA permits the Tribe and State to negotiate over the application of each entity's civil laws and regulations over gaming and other activities directly related thereto; as well as the allocation of civil jurisdiction between the State and the Tribe as "necessary for the enforcement of such laws and regulations." 25 U.S.C. § 2710(d)(3)(C)(i)-(ii).[5] The Compact contains provisions setting forth how the Tribe is to regulate the gaming addressed in the Compact, including the regulation of all sports betting gaming activity. *See*, *e.g.*, ECF 1-1 at 23-31 (Part V) (setting forth the minimum regulatory requirements the Tribe is to enforce in connection with the gaming addressed in the Compact, including sports betting and other games).

And because the placement of the online sports wager physically off of the Tribe's Indian lands is an activity that is "directly related to the operation of gaming activities" authorized by the Compact—*i.e.*, the receipt by the Tribe of such wager on its Indian lands authorized by the Compact consistent with IGRA—it is a permissible subject that can be addressed in the Compact. 25 U.S.C. § 2710(d)(3)(C)(vii). IGRA sets forth seven categories of subjects that a state and Indian tribe can negotiate over and agree to in a Compact. *Id.* § 2710(d)(3)(C)(i)-(vii). Courts have construed the last of these provisions, which covers "any other subjects that are directly related to the operation of gaming activities," *id.* § 2710(d)(3)(C)(vii), as an ambiguous catch-all provision that can reach other subjects or activities that are "directly related" to the Class III gaming that the Compact approves. *See*, *e.g.*, *Chicken Ranch Rancheria of Me-Wuk Indians v. Newsom*, No. 19-CV-0024, 2021 WL 1212712, *2 (E.D. Cal. Mar. 31, 2021), *appeal filed*, No. 21-15751 (9th Cir.) (the "catch-all" provision allowing a tribe and state to negotiate over and agree to subjects "directly related to the operation of gaming activities" in a compact);

---

[5] *See also* S. Rep. No. 100-446, at 14 (1988), as reprinted in 1988 U.S.C.C.A.N. 3071, 3084 ("A compact may allocate most or all of the jurisdictional responsibility to the tribe, to the State or to any variation in between.").

*Fort Indep. Indian Cmty. v. California*, 679 F. Supp. 2d 1159, 1173-76, 1178-79 (E.D. Cal.

2009) (provision is ambiguous, and the court extended *Skidmore* deference to the agency for its

interpretation that it encompasses revenue sharing agreed to in the compact).[6]

Here, the placement of wagers off of the Tribe's Indian lands is an activity that is

"directly related to" the Tribe's "operation of gaming activities" authorized by the Compact—

*i.e.*, the receipt of such online wager to consummate the betting transaction.  Thus, consistent

with IGRA, the Tribe and the State negotiated over and agreed to allocate the State's regulatory

jurisdiction to the Tribe over the placement of online sports wagers by persons in Florida

physically located off of the Tribe's Indian lands.  The allocation of tribal and state jurisdiction is

a permissible subject for a compact, § 2710(d)(3)(C)(i)-(ii); and the placement of the wager off

of the Tribe's Indian lands is an activity that is "directly related" to the Tribe's receipt of such

wagers, § 2710(d)(3)(C)(vii).  This allocation of tribal civil regulatory jurisdiction to the Tribe in

the Compact is therefore permissible under IGRA.  Accordingly, the Compact does not violate

IGRA.  Plaintiffs' arguments to the contrary should therefore be rejected.

## III.    Plaintiffs Have Not Established that the Compact's Deemed Approval Violates Florida Law, the UIGEA, or the Wire Act

Plaintiffs make the unsubstantiated argument that "IGRA [r]equires [c]onsideration of

[s]tate [l]aw."  ECF 37-4 at 32.  Unmoored from the text of IGRA, Plaintiffs allege that "[w]hen

viewed as a whole, it becomes clear that IGRA forbid the Secretary from approving a compact

---

[6] Federal Defendants note that Interior recently issued a compact disapproval that discusses the "directly related to gaming" provision of IGRA.  *See* Letter from Bryan Newland, Assistant Secretary–Indian Affairs, to Claudia Gonzales, Chairwoman, Picayune Rancheria of Chukchansi Indians of California (Nov. 5, 2021), *available at* https://www.bia.gov/as-ia/oig/departmental-gaming-decisions.  This recent decision, which concerned activities not directly related to gaming, is fundamentally different from the facts here.  Nevertheless, Federal Defendants notify the Court and the parties of such decision.

that violates or is inconsistent with state law." *Id.*  Plaintiffs also posit that the online sports

betting provisions of the Compact violated UIGEA because "sports bets placed under the 'hub

and spoke' model are not initiated and received in the same location."  ECF 37-4 at 31 (citing 31

U.S.C. § 5362(10)(C)).  Plaintiffs further argue that the Compact violates the Wire Act because

"[s]ports betting is illegal in Florida," and therefore, Plaintiffs argue, "any bet originated outside

of Indian lands implicates the Wire Act."  ECF 37-4 at 29.  Plaintiffs make an additional Wire

Act argument that, because the Compact allegedly "allows interstate sports betting," it violates

the Wire Act.  *Id.* at 29-30.  As set forth below, the Secretary was not required to disapprove the

Compact on any of these grounds, and *Amador County* does not hold otherwise.  Nevertheless,

Plaintiffs' contentions lack merit in any event and should be rejected.

### A.  Neither IGRA Nor *Amador County* Mandates the Secretary Take Action on a Compact Based on Other Federal Laws or State Law

Plaintiffs have already conceded that, under IGRA, the Secretary "'*may disapprove'* any

compact that violates IGRA, any provision of IGRA, any other federal law, or the trust

obligations of the United States to Indians."  ECF 1 at 5 (¶ 12) (citing 25 U.S.C.

§ 2710(d)(8)(B)).  They further concede that the "Secretary is also authorized to . . . take no

action on a compact."  ECF 37-4 at 24.  These concessions align with the text and structure of

IGRA, and D.C. Circuit case law does not hold otherwise.  IGRA broadly authorizes the

Secretary to approve gaming compacts, 25 U.S.C. § 2710(d)(8)(A), and provides that the

Secretary "*may* disapprove" a compact "only if" it violates (1) "any provision of this chapter,"

(*i.e.*, IGRA); (2) "any other provision of Federal law that does not relate to jurisdiction over

gaming on Indian lands," or (3) "the trust obligations of the United States to Indians, *id.*

§ 2710(d)(8)(B)(i)-(iii) (emphasis added).

Plaintiffs read the provision referring to "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," *id.* § 2710(d)(8)(B)(ii), as imposing a mandate that the Secretary, during the limited 45-day statutory review period, review and make determinations as to a compact's compliance with this provision.  *See* ECF 37-4 at 12.  And Plaintiffs contend that the Secretary should not only have reviewed and analyzed any federal law that could be implicated by the Compact, including but not limited to the UIGEA and the Wire Act, but asserts that the Secretary must analyze "state law governing gaming."  ECF 37-4 at 12, 32.  Plaintiffs' position puts no limitation on the scope of such "mandate."  Plaintiffs' reading, taken to its extreme, suggests that the Secretary is required by IGRA to examine, in the 45-day period, an untold number of statutory provisions contained within an untold number of federal statutes "that do[] not relate to jurisdiction over gaming on Indian lands," as well as the case law interpreting them, contained in the United States Code.

Such construction—which requires reading the IGRA provision in isolation to produce absurd results—is not warranted here, because the Court should read the provision in the context of IGRA as a whole, and especially in the context of the statutory provision that immediately follows, wherein IGRA grants the Secretary the authority to take no action on gaming compacts. *Id.* § 2710(d)(8)(C).  This provision states that if the Secretary does not approve or disapprove the compact within the 45-day window, the compact will be considered to have been approved, but "only to the extent the compact is consistent with the provisions of [IGRA]."  *Id.*  Thus, IGRA provides a check on compacts that are deemed approved by the Secretary but may have provisions that are inconsistent with IGRA.  And that provision establishes no mandate that the Secretary engage in legal analysis of all potentially relevant federal and state laws prior to the end of the 45-day review period.  *Id.*  Nor could that provision be read to require such an

exercise.  Viewed against the 45-day review period, Congress clearly did not intend to ensnare the Secretary in lengthy expeditions through the United States Code, federal agency regulations, or a state's statutes, regulations, and common law.[7]  Moreover, in connection with compact reviews, the Secretary is entitled to rely on representations by the State that it had validly entered into the Compact consistent with state law, and she is not required to resolve state law questions such as those posed by Plaintiffs here.  *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997) ("a compact is not *valid* unless properly authorized, but the Secretary is not expected to *resolve* state law issues regarding that authority in the 45-day period given to [her] to approve the compact") (emphasis in original).

     *Amador County v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011), is not to the contrary.  *Amador County* addressed whether a statutory deemed approval of a compact was judicially reviewable under the APA, and concluded it was to the extent that the Compact was contrary to IGRA.  *Id.* at 380-383.  And while the *Amador County* court did state in the context before it that IGRA obligates the Secretary to disapprove (rather than not act upon) a compact that violates provisions of IGRA, *see id.* at 381, the *Amador County* court did not find that Section 2710(d)(8)(C) mandated that the Secretary disapprove for an alleged violation of other federal or state law. In fact, *Amador County* suggested the contrary:

---

[7] The only congressional report in IGRA's legislative history does no more than describe the provisions of § 2710(d)(8).  S. Rep. No. 100-446, at 19 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3089.  However, the report shows that Congress "concluded that the use of compacts between tribes and states is the best mechanism to assure that the interests of both sovereign entities are met with respect to the regulation of complex gaming enterprises."  *Id.* at 13.  "The legislative history thus shows that Congress looked to the compacting process primarily as a means of balancing state and tribal interests."  *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 726 (9th Cir. 2003).  Thus, the Secretary's role in the compacting process is limited, and Congress's decision to allow the Secretary to pass on expressly approving or disapproving a compact is consistent with the overall statutory goals and structure.

> That short [45-day] time period, the Secretary insists, suggests that Congress was concerned that the Secretary would act too slowly, and thus "Congress's intent was not to embroil the Secretary in lengthy investigations into whether the compact violated federal law, IGRA, or trust obligations." Appellees' Br. 45. *While this may be correct as to compliance with other federal law* and trust obligations, the caveat demonstrates that Congress had no intention of trading compliance with IGRA's requirements for efficiency in agency proceedings.

*Id.* at 381 (emphasis added).

Bedrock principles of statutory construction prevent reading *Amador County* as holding the Secretary must disapprove a compact for purported violation of other federal or state law. That interpretation would significantly rewrite Section 2710(d)(8)(C) if the only options the Secretary retains under Section (d)(8) is to approve under (d)(8)(A) or to be mandated to disapprove under (d)(8)(B).  *See Amador County*, 640 F.3d at 381; *see also Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp.181-186 (rev. 6th ed. 2000)) ("'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'").[8] Because there is no mandate in IGRA obligating the Secretary to analyze potentially pertinent other federal and state laws prior to the 45-day window closing under Section 2710(d)(8)(C), Plaintiffs' allegations that the Secretary violated IGRA in her deemed approval of the Compact because the Compact purportedly violates the Wire Act and the UIGEA are unfounded.

---

[8] To be clear, the *Amador County* court provides seemingly inconsistent statements regarding Section 2710(d)(8)(B) and 2710(d)(8)(C).  First, the Court said that the Secretary "must" disapprove a compact if it falls within any of the subsections of 2710(d)(8)(B).  640 F.3d at 381.  But then the Court seems to pivot, saying that Section 2710(d)(8)(C)'s forty-five-day time frame may be too short to assume Congress intended the Secretary to participate in an analysis of whether a compact violates federal law generally. *Id.*  The case is therefore subject to interpretation, and it is the United States' position that, so to not render Section 2710(d)(8)(C) meaningless, the Court should not hold that the Secretary must analyze all potentially pertinent federal and state laws prior to the close of the statutorily-prescribed 45-day window.

**B.   Plaintiffs Have Failed to Prove that the Compact's Deemed Approval Violates Florida Law, the UIGEA, or the Wire Act in Any Event**

As a preliminary matter, to the extent Plaintiffs contend otherwise or request relief under these statutes, ECF 37-4 at 12, they have no private right of action under either the Wire Act or UIGEA.  *See, e.g.*, *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) (no private right of action from a criminal statute); *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995) (same); 31 U.S.C. § 5365(b)(1)-(2) (authorizing only the United States or a state attorney general to initiate proceedings).  Because there is no private right of action for either of these statutes, Plaintiffs are entitled to no relief under these laws. But insofar as Plaintiffs allege that Interior and the Secretary violated IGRA in allowing the Compact to go into effect because the Compact purportedly violates the Wire Act and the UIGEA, those arguments are flawed and also warrant no relief.

Moreover, and even if the Court disagrees with the United States' position regarding the Secretary's duty to analyze all pertinent federal and state laws prior to the close of the 45-day window, no relief is warranted on Plaintiffs' state law, UIGEA, and Wire Act allegations.

**i.   The Court Should Reject Plaintiffs' Contentions Regarding State Law**

Plaintiffs allege that the gaming contemplated in the Compact violates state law, ECF 37-4 at 33-37, and that the Secretary should have disapproved the Compact on these grounds, ECF 37-4 at 12, 32.  The premise underlying this assertion is Plaintiffs' theory that when the Florida Legislature enacted the state law ratifying the Compact, it did so without complying with Amendment 3's voter approval requirement, and thus the state law could not make online sports betting legal in the State.  ECF 37-4 at 33-37.

But as set forth above, Florida contends otherwise.  *See* ECF 47 at 13 ("Plaintiffs are wrong that online sports betting is illegal in Florida off Indian lands . . . .").  As the State

explains, when enacting the state law ratifying the Compact, "the Florida Legislature specifically excepted gaming 'conducted pursuant to a gaming compact ratified and approved' under state law from otherwise-applicable state law criminal prohibitions." *Id.* at 14 (citing Fla. Stat. § 285.710(13)(b)(7)).  The State has further explained that the Compact falls within Amendment 3's "IGRA-compact exception," specifically, the provision of Amendment 3 that states that nothing in it "limit[s] the ability of the state or Native American tribes to negotiate gaming compacts pursuant to the Federal Indian Gaming Regulatory Act for the conduct of casino gambling on tribal lands."  *See* ECF 47 at 18-19.  The State also argues why Amendment 3 should not be construed so narrowly so as to make the IGRA-compact exception contained within it meaningless.  *Id.* at 20.

The State has refuted Plaintiffs' arguments to the contrary, and the views of the State as to the lawfulness of state legislation under its own constitution should be given considerable weight in the Court's analysis.  *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006) ("[F]ederal courts construe state statutes to avoid constitutional difficulty when fairly possible . . .") (internal quotation marks omitted)).  *See also Jones v. United States*, 529 U.S. 848, 857 (2000) ("guiding principle that 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter'") (quotation omitted).  To hold otherwise would interject into this proceeding the details and validity of state law, when the State is not before the Court, which among other things, could raise abstention concerns.

A finding by the Court that the state law violates the Florida constitution would significantly impact the interests, including financial interests, of the State and local municipalities related to the Compact.  *See Iowa Indep. Bankers v. Bd. of Gov'rs of Fed. Res.*

20

*Sys.*, 511 F.2d 1288, 1301 (D.C. Cir. 1975) (stating that abstention only warranted "where some important value unrelated to the precedential weight of the forum is involved," and that "state law must be sufficiently unclear that a substantial likelihood exists that a state court resolution of the state law issues will forward the goal that the abstention was meant to achieve"). *See also* ECF 1-1 at 9 (discussing minimum payments from the Tribe to the State under the Compact).

A federal court may reach questions of local law, and abstention generally is narrowly applied, but if the Court were to reject the State's arguments concerning the state constitutionality of the state law ratifying the Compact, that could suggest that the state law's constitutionality under the Florida Constitution is "sufficiently unclear" so as to warrant abstention. *Iowa Indep. Bankers*, 511 F.2d at 1301 (discussing this requirement for abstention); *Reetz v. Bozanich*, 397 U.S. 82, 86-87 (1970) (concluding abstention warranted because "the nub of the whole controversy may be the state constitution" and the case fit squarely within the principle underlying the abstention doctrine, specifically "'the avoidance of needless friction' between federal pronouncements and state policies'") (quoting *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).  The Court should consider refraining from reaching such questions as Plaintiffs presumably could and should resolve these issues in an appropriate state forum.  Indeed, since many of the claims and relief sought in these cases involve the State and state law, a state forum would be the more appropriate for any such challenge.  But here, the State has represented to the Secretary and this Court that it entered into and ratified the Compact consistent with state law, including the Florida Constitution.  The Court should rely on those contentions and reject Plaintiffs' unsubstantiated arguments to the contrary.

### ii.  Plaintiffs Failed to Establish Any UIGEA Violation

Plaintiffs' UIGEA allegations fail to establish any violation of the statute.  Again, that statute "does not make gambling legal or illegal directly." *Iipay,* 898 F.3d at 965.  Rather,

UIGEA prohibits anyone "engaged in the business of betting or wagering" from "knowingly accept[ing]" certain types of payments "in connection with the participation of another person in unlawful Internet gambling." 31 U.S.C. § 5363.  And "unlawful Internet gambling" means placing, receiving, or otherwise knowingly transmitting a bet or wager "by any means which involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made."  31 U.S.C. § 5362(10)(A).

Plaintiffs do not grapple with the derivative nature of UIGEA, arguing that a "bet or wager initiated outside the lands of a single Indian tribe is . . . subject to UIGEA's general prohibition." ECF 37-4 at 32.  But UIGEA has no "general prohibition."  *See Iipay*, 898 F.3d at 965.  Because Plaintiffs have not established any violation of another federal or state law in connection to internet gaming, UIGEA is not implicated here.

To the extent Plaintiffs argue that UIGEA is violated because the bets or wagers at issue here are purportedly unlawful under Florida law, or that the Tribe is not permitted to receive wagers from off of its Indian lands, *see* ECF 37-4 at 31, those argument are also wrong.  Here, as set forth above, the placement of an online sports wager in Florida but off of the Tribe's Indian lands is legal under state law and the receipt of such wager by the Tribe on its Indian lands is legal under IGRA.  Thus, the circumstances here are fundamentally different than those in *Iipay*, because the sports betting is "legal both where it is 'initiated' and where it is 'received,'" 898 F.3d at 965. Plaintiffs' claims to the contrary thus fail.

### iii.  Plaintiffs Failed to Establish Any Wire Act Violation

Plaintiffs allege that the Compact violates the Wire Act, 18 U.S.C. § 1084(a), because it purportedly allows  bets or wagers, information assisting in the placement of bets or wagers, or bank wire transfers in connection to those bets or wagers, to be transmitted "in interstate or

foreign commerce," *id*; ECF 37-4 at 15-16, 29-30.  Plaintiffs argument seems to be two-pronged: (1) that because sports betting is purportedly illegal in Florida (despite the numerous representations by the State Attorney General to the contrary, ECF 47), bets placed and received as between the Tribe's Indian lands and nontribal state lands are "interstate" transmissions unlawful under the Wire Act, ECF 37-4 at 29; and (2) that the Compact allegedly allows interstate sports betting as between Florida and other states in violation of the Wire Act, *id*. at 29-30.

To the extent that the Compact contemplates online sports betting that occurs entirely within the State of Florida, the Wire Act is not implicated at all. *See* 18 U.S.C. 1084(a) ("in interstate or foreign commerce").  That is, if bets are being placed off the Tribe's Indian lands in Florida and received on the Tribe's Indian lands—all of which are wholly within Florida—and no "transmissions" of "bets or wagers" occur outside of Florida, then there is no violation of the Wire Act. *See United States v. Lyons*, 740 F.3d 702, 713 (1st Cir. 2014) ("the Wire Act prohibits interstate gambling without criminalizing lawful intrastate gambling").  Plaintiffs ignore the text of the statute, 18 U.S.C. 1084(a) ("*interstate* or foreign") (emphasis added), arguing that the Wire Act applies when the betting or wagering is between a person in a state and a person on an Indian reservation that is wholly within that state, ECF 37-4 at 20.  They offer no support for this position, and thus it should be rejected outright.  To be clear, it is the United States' position that if a bet or wager is placed and received intrastate, but that bet or wager or information facilitating that bet or wager is transmitted or routed outside of that state at any time, then the Wire Act may be implicated and violated. *Cf.* 18 U.S.C. § 1084(b).  However, Plaintiffs have not alleged any facts establishing that the Wire Act *is* being violated here.  Plaintiffs' Wire Act arguments therefore fails.

Plaintiffs' argument that the Compact violates the Wire Act because it allegedly "allows *interstate* sports betting," ECF 37-4 at 29-30, must also be rejected.  Arguing that the Compact "provides no reliable mechanism for ensuring that bets from Alabama or Georgia . . . will not be processed through the Seminole Tribe's server," ECF 37-4 at 30, is merely a conclusory, unsubstantiated allegation that should not be afforded any relief.  Thus, Plaintiffs' Wire Act allegations need to be rejected.[9]

### C.  Federal Defendants' Position Here Does Not Contradict Past Federal Government Positions or Case Law Regarding Internet Gaming

The cases cited by Plaintiffs and the federal government's prior positions, *see* ECF 37-4 at 27-28, regarding internet gaming all involved fundamentally different factual circumstances than those at issue here.  Those cases and circumstances all involved Indian tribes acting unilaterally without any compact, without any jurisdictional allocation, and without any state law approval.  That renders them all fundamentally distinguishable from this case.

In *Iipay*, the tribe argued that the gaming activity that was illegal in the state could be made legal by the tribe's unilateral use of a proxy play.  898 F.3d at 966-67.  Because the gaming was illegal in the state, the Court concluded the tribe's gaming violated the UIGEA. *Id.* at 967.  Here, in contrast, not only is the gaming *legal* in Florida, the Tribe and State have a compact agreeing to this type of gaming.  There is simply no conflict with the circumstances in this case

---

[9] Moreover, the Court in this civil matter should avoid making pronouncements on matters of federal criminal law so to avoid overstepping criminal procedure principles and prosecutorial discretion.  *See Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1249 (11th Cir. 1999).  In that case, the Eleventh Circuit explained that "two negative consequences" could result from mandating civil remedies, like an injunction, on matters of criminal law. *Id.*  First, if the court pronounces a violation of federal criminal law, the individuals or entities said to be violating those federal criminal laws "would be deprived of [their] congressionally-recognized right to invoke the safeguards of criminal procedure." *Id.* Second, "the discretion of the United States not to prosecute the [person or entity] would be severely restricted in light of the court's" pronouncement in the civil action. *Id.*

and those in *Iipay*.  The United States' position there did not address the issues presented here, and to the extent that there is conflict, this brief sets forth the United States' position.

Likewise, the facts and circumstances in *AT&T Corp. v. Coeur D'Alene Tribe*, 45 F. Supp. 2d 995 (D. Idaho 1998), *rev'd on other grounds*, 283 F.3d 1156 (9th Cir. 2002), are readily distinguishable from those here.  In that case, the Indian tribe and the State of Idaho had a compact, *id.* at 998, but because the Indian tribe did not have a compact with other affected states, the tribe could not receive online sports wagers originating from those jurisdictions, *id.* at 1002.  As the court explained, "IGRA does not contemplate that a tribe's class III gaming operation can be operated in a state without first addressing, through the negotiation of a compact, that state's legitimate interest in regulating gaming activities within its borders."  *Id.* The court further explained that the Indian tribe's unilateral "interjection of gaming activities into states with which it has no compact, upset the balance Congress struck in IGRA between 'the need for state enforcement of gaming laws [and] the federal and tribal interests in traditional tribal sovereignty."  *Id.* (quoting *Wilson*, 124 F.3d at 1060).  Here the State's "legitimate interest in regulating gaming activities within its borders" was addressed through the Compact, and thus this case poses no barriers to the Compact under IGRA or other federal laws.

And the National Indian Gaming Commission ("NIGC") opinions Plaintiffs cite, *see* ECF 37-4 at 27, are not contrary to the positions reflected herein.  Those opinions reflect NIGC's view that IGRA does not authorize any activities occurring off of Indian lands, and that, because the proposed gaming transaction included gaming activity that was at least partially located off of Indian lands, IGRA alone could not authorize such activity.  Just as IGRA cannot authorize activities occurring off of Indian lands, nor does IGRA render such off-Indian lands activity unlawful.  *See*, *e.g.*, *Coeur D'Alene Tribe*, 45 F. Supp. 2d at 1004 (national lottery at issue "[did]

not 'violate' IGRA, it simply is not covered by that statute to the extent its operations occur off reservation," and when occurring "out-of-state and outside the limits of any reservation, state law applies to regulate that conduct").

For these same reasons, Plaintiffs' argument that the Compact impermissibly "enriches" non-Tribal entities in violation of IGRA, ECF 37-4 at 37-38, must be rejected.  Plaintiffs' contentions, without reference to supportive case law, assert that the provisions of the Compact that permit the Tribe to enter into partnerships with pari-mutuel commercial entities violate IGRA because they fail "to ensure that the Indian tribe is the primary beneficiary of the gaming operation." ECF 37-4 at 37 (citing 25 U.S.C. § 2702(2)).  First, Plaintiffs do not establish that a provision of IGRA setting forth Congress's policy goals translates into a legal duty for Federal Defendants.  Second, even if Plaintiffs' characterizations of the respective profits expected to be generated for the Tribe and the pari-mutuel entities are correct, and we do not concede they do, Plaintiffs have not demonstrated how the Tribe is still not the "primary beneficiary" from the sports betting overall.  *See*, *e.g.*, *City of Duluth v. Fond du Lac Band of Superior Chippewa*, 830 F. Supp. 2d 712, 723 (D. Minn. 2011), *aff'd in part*, 702 F.3d 1147 (8th Cir. 2013) (discussing NIGC adjudication of propriety interest provision).  After all, the Compact permits the Tribe to offer sports betting in-person, ECF 1-1 at 16 (III.CC.1), as well as online without any pari-mutuel marketing partner, *id.* (III.CC.2).  Any pari-mutuel partnership entails the Tribe maintaining control over the gaming and the pari-mutuel company providing marketing or other similar services for the Tribe. *Id.* at 16-17 (III.CC.3(a)-(b)).  Third and last, the sharing of revenue stemming from the gaming contemplated in a Compact is a permissible subject the Tribe and State can negotiate over and agree to in such Compact. *Fort Indep. Indian Cmty.*, 679 F. Supp. 2d at 1174-80 (concluding that 25 U.S.C. § 2710(d)(3)(C)(vii) allows for an Indian tribe and

state to negotiate over and agree to revenue sharing in a compact, "when it is tied to a[ tribal] exclusivity provision").

For all the reasons stated above, Plaintiffs have failed to establish that the Compact's deemed approval violates Florida law, the Wire Act, or the UIGEA, and thus Plaintiffs are entitled to no relief on the basis of their contrary allegations.

## IV.    The Compact's Deemed Approval Does Not Impermissibly Extend Exclusivity to the Tribe

Plaintiffs argue that IGRA does not authorize the sports betting, craps, and roulette contemplated in the Compact because the State does not permit other entities to engage in such gaming activity within the state.  Plaintiffs misread and misstate IGRA's requirements, as no statutory provision (or other precedent) holds that a state must first offer a game generally within the state before agreeing that an Indian tribe may offer it too.  Indeed it is quite common for a state to only agree that an Indian tribe may conduct certain gaming in a state, and such arrangement is often the very basis for revenue-sharing payments to the compacting state.

IGRA requires gaming authorized by a compact to be "located in a State that permits such gaming for any purpose by any person, organization, or entity."  25 U.S.C. § 2710(d)(1)(B); *see also* 25 U.S.C. § 2710(b)(1)(A).  However, a tribe may be the *only* "any person, organization, or entity" authorized by the statute to offer such gaming.  *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 722 (9th Cir. 2003).  Indeed, tribes across the country have been granted, through compacts, the exclusive right to conduct certain forms of gaming in exchange for providing revenue sharing payments to the state, and exclusivity is the very justification that allows for such revenue sharing.  *See* 25 U.S.C. § 2710(d)(4) (prohibiting states from imposing taxes on tribes' IGRA gaming); *Rincon Band of Luiseño Mission Indians v. Schwarzenegger*,

602 F.3d 1019, 1033 (9th Cir. 2010) (permitting state to receive revenue share payments from tribes in exchange for meaningful concessions providing substantial economic benefits).

Here, the State statute ratifying the 2021 Compact explicitly states "[f]or the purpose of satisfying the requirement in 25 U.S.C. § 2710(d)(1)(B) that the gaming activities authorized under an Indian gaming compact must be permitted in the state for any purpose by any person, organization or entity," certain games are "hereby authorized to be conducted by the Tribe pursuant to the compact," including sports betting.  SB 2-A, § 2 (Fla. 2021) (codified at Fla. Stat. § 285.710(13(b)); *see also* Appendix at AR103.  Further, the significant revenue sharing payments the Tribe is required to provide to the State under the Compact are justified by the exclusivity rights the Compact provides the Tribe.  As a result, IGRA's requirement that the State permits such gaming for any purpose by any person, organization, or entity is met here.

Lastly, and to the extent Plaintiffs contend otherwise, it is no violation of IGRA or any other statute, regulation, or constitutional provision for a state to negotiate with a tribe and reach agreement through a tribal state compact that allows the tribe to offer gaming exclusively throughout the state. *See Artichoke Joe's*, 353 F.3d at 730, 741-72 (no violation of either IGRA or the Equal Protection Clause for the state to offer exclusive right to offer certain games to Indian tribes);

## V.      The Administrative Record

Pursuant to the Court's order, Federal Defendants have filed, concurrently herewith, a certified list of the contents of the Administrative Record, *see* ECF 52, and also concurrently herewith, provided a copy of the Administrative Record to Plaintiffs.[10]

---

[10] Federal Defendants' understanding is that the court in *Amador County* did not have before it the agency's administrative record.  That court concluded the plaintiff's challenge alleged the deemed approval was "contrary to law," and on that basis, stated that it did not need "agency

In APA cases, "'[i]t is well settled that judicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made." *Am. Bottling Co. v. Nat'l Labor Relations Bd.*, 992 F3d 1129, 1140 (D.C. Cir. 2021) (quoting *Env't Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981)).  This is because under the APA, a court must review agency action "based on the record the agency presents to the reviewing court," *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985), "not some new record made initially in the reviewing court," *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "Exceptions to th[is] rule are quite narrow and rarely invoked[,] . . . primarily limited to cases where the procedural validity of the agency's action remains in serious question, or the agency affirmatively excluded relevant evidence." *Banner Health v. Price*, 867 F.3d 1323, 1335 (D.C. Cir. 2017) (quoting *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014)).

This case is unlike most APA cases, in that the final agency action—the Compact's deemed approval—does not involve a written decision from Interior setting forth its rationale. Plaintiffs point to a letter issued, after the final agency action, by then-Acting Assistant Secretary–Indian Affairs Bryan Newland, *see* ECF 1-5, in making their merits arguments.  There is no statutory or regulatory mandate obligating the Secretary or other Interior officials to issue letters in connection with deemed approved compacts.  The letter, moreover, does not constitute

---

reasoning."  640 F.3d at 382.  Federal Defendants note, however, that on remand to the district court, the United States did submit an administrative record to the Court.  *Amador County v. S.M.R. Jewell*, No. 05-CV-658, *Notice of Filing of Certified Administrative Record Contents* (D.D.C. May 14, 2015).  *See also Amador County v. S.M.R. Jewell*, 170 F. Supp. 3d 135, 141 (D.D.C. 2016) (setting out APA standards governing judicial review on an agency's record, but stating that, "this is not a typical APA case" because the matter was remanded "specifically for a factual determination with respect to the parties' intent in executing the 1987 *Hardwick* stipulated judgment . . . [i]t is not the administrative record that is determinative of this issue; rather this Court must consider documents outside the administrative record and judicially noticeable matters that are germane to the remand question.")

an agency decision, nor is it final agency action.  Because the letter was issued after the only

final agency action at issue here (the Compact's deemed approval), the letter is not part of the

administrative record.  Nevertheless, to the extent the Court concludes that the letter, despite it

being extra-record evidence, helps address the Court's questions about the final agency action

here, controlling precedent permits the Court to consider it in its review.  *See*, *e.g.*, *Price*, 867

F.3d at 1335.  To the extent the letter is construed as inconsistent with the positions set forth here

and in other filings made on behalf of Federal Defendants in this case, the position set forth in

such briefs governs as the position of the United States.

     In addition, and as set forth above, the Secretary published notice of the Compact's

deemed approval in the *Federal Register* on August 11, 2021.  This publication, as it occurred

after the final agency action at issue here, is also outside the administrative record.  The Court is

nevertheless entitled to take judicial notice of *Federal Register* publications.  44 U.S.C. § 1507

("The contents of the Federal Register shall be judicially noticed and without prejudice to any

other mode of citation, may be cited by volume and page number.").  Federal Defendants

contend it is proper for the Court to do so here, as it reflects the Secretary's ministerial

compliance with IGRA's publication requirement following the Compact's deemed approval.

## CONCLUSION

     For the foregoing reasons, Federal Defendants request that the Court deny Plaintiffs'

Motion for Summary Judgment, or in the Alternative, Preliminary Injunction (ECF 19).

     Respectfully submitted this 9th day of November, 2021.

                        TODD KIM
                        Assistant Attorney General
                        Environment and Natural Resources Division

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
HILLARY K. HOFFMAN, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice

OF COUNSEL:                          P.O. Box 7611, Ben Franklin Station
JODY H. SCHWARZ                      Washington, DC 20044
Senior Attorney                      Telephone:  (202) 616-3148
Office of the Solicitor              rebecca.ross@usdoj.gov
Division of Indian Affairs           hillary.hoffman@usdoj.gov
                                     *Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I, Rebecca M. Ross, hereby certify that on November 9, 2021, I caused the foregoing

FEDERAL DEFENDANTS' SUPPLEMENTAL MEMORANDUM to be sent electronically to

the registered participants as identified on the Notice of Electronic Filing.

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice